IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

MARCOS OLIVAS CASTILLO,

        Plaintiff,

vs.                                                       CIVIL NO. 11-69 LFG/RHS

U.S. DEPARTMENT OF HOMELAND
SECURITY; JANET NAPOLITANO,
Secretary of the U.S. Department of
Homeland Security; U.S. IMMIGRATION
AND CUSTOMS ENFORCEMENT (ICE),
a division of the Department of Homeland
Security; JOHN MORTON, ICE Director;
and ALEJANDRO MAYORKAS, USCIS
Director,

        Defendants.

**MEMORANDUM OPINION AND ORDER**
**GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**
**AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

THIS MATTER is before the Court on two motions:

1. Defendants' Motion for Summary Judgment [Doc. 20]. The Court considered the motion, Memorandum in Support [Doc. 21] and Plaintiff's response in opposition [Doc. 25]. No reply was filed.

2. Plaintiff's Motion for Summary Judgment [Doc. 22]. The Court considered the motion, Brief in Support [Doc. 23], and Defendants' Response in Opposition [Doc. 26]. No reply was filed.

**Background**

This Freedom of Information Act ("FOIA") lawsuit commenced when Plaintiff Marcos Olivas Castillo ("Castillo") sought release of information in believed to be contained within his alien registration file. Castillo initially brought his action against various federal agencies, and the Court

previously entered an order dismissing the United States Citizenship and Immigration Services ("USCIS") from this litigation [*see* Memorandum Opinion and Order, Doc. 15].

Further, it is undisputed that during the pendency of this lawsuit, Castillo was provided with a new set of redacted records which disclose some, but not all, of the information he requested. What remains in this FOIA action is whether the exemptions under which Defendants declined to disclose information are applicable, either under FOIA or the companion Privacy Act.

The crux of the current dispute is whether Castillo may gain access to the names of individuals interviewed during Defendants' investigation into an allegedly sham marriage, and whether the statements produced by the interviewees can be disclosed to Castillo. Castillo contends that if he is not given this information, he is unable to rebut the statements made by the witnesses.

The current status of Castillo's FOIA request is that all documents in the system of records maintained by U. S. Immigration and Customs Enforcement ("ICE") and USCIS have been produced to Castillo, with the exception of portions of eight pages which have been withheld pursuant to exemptions (k)(2) of the Privacy Act and exemption 6 of FOIA.

Pursuant to a declaration of Ryan Law ("Law"), the Deputy FOIA Officer [Doc. 21-1], ICE received and processed records which were responsive to Castillo's FOIA request, and released all except fifteen pages which were withheld in whole or in part pursuant to FOIA's exception 6 and 7(C). Because documents were withheld, and consistent with the requirements of Vaughn v. Rosen, 484 F.2d 820 (D.C. Cir. 1973), Defendants provided a Vaughn index to Castillo.

Subsequent of the referral by ICE to USCIS, a second review of the withheld documents was conducted and all documents were produced save for documents which were withheld pursuant to the investigative law enforcement purpose exemption, as they relate to an investigation into the validity of the marriage supporting a petition for an alien relative filed by Castillo's then wife.

In addition to the law enforcement investigative exemption, these documents were also withheld pursuant to exemption (b)(6) of 5 U.S.C. § 522(b)(6), on the ground that release of these documents would cause a clearly unwarranted invasion of personal privacy.  Defendants asserted the privacy exemption to withhold personal identifiable information, including information that could be tied to an individual, including names, addresses, job titles, work locations, dates of birth, residential addresses, and identity of state and federal law enforcement agencies, as well as names, addresses, social security numbers, and telephone numbers of individuals who were interviewed as part of the investigation into the purported marriage which was under investigation.  This personal privacy exemption is intended to protect those individuals from unnecessary, unofficial questioning and potential harassment.

Law contends that individuals who provided information during the course of the investigation could be humiliated by being identified in connection with the prior criminal investigation, could themselves become targets of harassment, retaliation and even physical danger, or even have their own identities stolen.  Those individuals who participated in the investigation have not consented to disclosure of their information.

> To reveal the names and/or identifying information of third party individuals in the context of these records could reasonably be expected to cause embarrassment and humiliation, and thus constitute a clearly unwarranted invasion of personal privacy.  The names of third parties connected with subjects of investigation were also withheld to protect such individuals from humiliation, and/or harassment.

[Doc. 21-1 at 7, ¶ 24].

Law concluded that Castillo's interests in securing names and statements of cooperating individuals were not outweighed by any public interest in the disclosure.

In a cross-motion for summary judgment, Castillo contends that he no longer seeks information relating to law enforcement officers, but only seeks the identity and the actual statements provided to law enforcement officers during the course of the investigation.

## Analysis

FOIA was enacted "to promote honest and open government" Grand Central Partnership, Inc. v. Cuomo, 166 F.3d 473, 478 (2d Cir. 1999), and "to ensure public access to information created by the government in order to hold the governors accountable to the governed." Tigue v. U.S. Dept. of Justice, 312 F.3d 70, 76 (2d Cir. 2001).

When a governmental agency receives a FOIA request, the law mandates disclosure of records held by the federal agency to the extent that records about an individual are maintained in a Privacy Act system of records that may be accessed by that individual. The agency may, however, exempt a system of records from the access provisions of the Privacy Act. 5 U.S.C. § 552(a)(D). Thus, FOIA requires disclosure of records unless the records requested fall within an enumerated exemption. *See* 5 U.S.C. § 552(b); *see also* Dep't of the Interior & Bureau of Indian Affairs v. Klamath Water Users Protective Ass'n, 532 U.S. 1, 7-8 (2001).

When the documents requested fall within one of the enumerated exemptions, they need not be produced. This is so because Congress indicated that there are some instances when disclosure of information is not in the public interest. Nat'l Record Archives & Records Admin. v. Favish, 541 U.S. 157, 172 (2004). Indeed, disclosure of certain information "may harm legitimate governmental or private interests." Thus, Congress enacted a number of exemptions to FOIA disclosures. Summers v. Dep't of Justice, 140 F.3d 1077, 1080 (D.C. Cir. 1998).

Federal law outlines the process that is generally used for FOIA requests. Primarily, determinations of whether documents are or are not subject to production are made pursuant to Fed.

R. Civ. P. 56. Miscavige v. IRS, 2 F.3d 366, 369 (11th Cir. 1993)("FOIA cases should be handled on motions for summary judgment, once the documents in issue are properly identified."). Thus, the process utilized by the parties to determine if the requested documents should be produced is appropriately handled by Rule 56 motion. [Docs. 20 and 22].

The law provides that the withholding agency has the burden of showing that its search was adequate, and that any withheld documents come within an applicable exemption. Carney v. Dep't of Justice, 19 F.3d 807, 812 (2d Cir. 1994). Thus, it is incumbent on the agency to submit an appropriate affidavit or declaration providing facts which show the steps taken by the agency to conduct a thorough search and providing reasonably detailed explanations as to why withheld documents fall within a specific exemption. Halpern v. FBI, 181 F.3d 279, 285 (2d Cir. 1999). This, the agency has done by the Law affidavit. [Doc. 21 at 1].

While this case was much broader when first initiated, it has since been narrowed to a very discreet issue: Is information provided to government investigators during the course of an investigation into the validity of the marriage supporting the petition for an alien relative filed by Castillo's then spouse, subject to production? The withheld pages include the identity of the cooperating individuals, their contact information, and the statements provided to law enforcement investigators.

Defendants' Vaughn index identifies the information withheld pursuant to exemptions from disclosure under the Privacy Act and those exemptions identified under FOIA. The Vaughn index is consistent with an agency's obligation to identify the kinds of documents withheld and specifically set out the reasons why a particular exemption is relevant. Morley v. C.I.A., 508 F.3d 1108, 1122 (D.C. App. 2007).

The Court's review of the <u>Vaughn</u> index leads it to conclude that it is sufficient to fully explain the documents withheld in full or released in part and the reason supporting its determination to withhold production of certain documents or portions of others. A similar index in this case was approved in <u>Judicial Watch, Inc. v. Food & Drug Admin.</u>, 449 F.3d 141, 147 (D.C. App. 2006) because it tied every withheld document to a particular exemption, and the reasons for withholding the document.

Exemption 6 applies to personnel, medical files or similar files, the disclosure of which would constitute a clearly unwarranted invasion of personal privacy. 5 U.S.C. § 552(b)(6). In this case, Law indicates that disclosure of the identity of individuals who provided information to law enforcement could subject those individuals to humiliation, harassment, or even more serious harm. [Doc. 21 at 1].

Indeed, it is commonplace in the law to grant certain protections to cooperating individuals. In federal courts, for example, proceedings involving individuals who are cooperating in a governmental investigation, often in return for various concessions including leniency in sentencing, are conducted in closed, sealed proceedings. The pleadings themselves are sealed to protect the identity of the cooperator and the fact that the cooperator is assisting governmental officials. *See, e.g.*, <u>United States v. A.B.</u>, 529 F.3d 1275 (10th Cir. 2008) (allowing (1) pleadings to be filed under seal, (2) case itself to be sealed, and (3) defendant to be identified by initials only out of safety concerns arising from defendant's cooperation with government).

In custodial settings, individuals who cooperate with law enforcement or correction officers are even housed in segregation to protect them from retribution. *See, e.g.*, <u>Morgan v. Arizona</u>, 2007 WL 2808477 (D. Ariz. Sept. 27, 2007) (civil-rights lawsuit stemming from injuries sustained by "snitch" inmate who was removed from segregated housing). Thus, it should be no surprise that

agencies are reluctant to release information concerning the identity of individuals who assisted during a law enforcement investigation because there is always a risk that disclosure of that kind of information may place a cooperator at risk.

This is not to say that Castillo would seek to harm any individual, and there is certainly no evidence before the Court that could warrant such a conclusion. However, disclosure of the identity and disclosure of the statements would certainly put those individuals at risk for being contacted by Castillo or his agents concerning the information provided, and those contacts could serve to humiliate, embarrass, or even intimidate the cooperators. Indeed, this was a concern discussed by Congress. *See* Dep't of Air Force v. Rose, 425 U.S. 352, 360-61 (1976)(*quoting* S. Rep. No. 813, 89th Cong., 1st Sess., 3 (1965)). Moreover, disclosure of a cooperator's identity and production of the cooperator's information may well have a chilling effect on others who would likely be less inclined to provide information during investigations if they knew their identities would be disclosed. In other words, the Court is entitled to consider the extent to which disclosure will thwart governmental process by discouraging citizens from giving the government information. *See, e.g.*, Frankenhauser v. Rizzo, 59 F.R.D. 339 (E.D. Pa. 1973).

As a result of that concern, exemption 6 was adopted, and it reflects a congressional intent to "protect individuals from the injury and embarrassment that can result fro the unnecessary disclosure of personal information." Wood, 432 F.3d at 86 (*quoting* U.S. Dep't of State v. Washington Post Co., 456 U.S. 595, 599 (1982)).

Here, Castillo argues that without knowing the identity of the cooperators and the information they provided, he is unable to refute their statements. While this may be true, the reason for Castillo's request is not recognized as a valid reason by law. The reason he wants access to the identity of cooperators and the statements they made may amount to a legitimate private interest,

however, it does not constitute a significant public interest. Favish, 541 U.S. at 172.

> Where the privacy concerns addressed by exemption 7(C) are present, the exemption requires the person requesting the information to establish a sufficient reason for the disclosure. First, the citizen must show that the *public interest* sought to be advanced is a significant one, an interest more specific than having the information for its own sake. Second, the citizen must show the information is likely to advance that [public] interest. Otherwise the invasion of privacy is unwarranted.

Id.

Castillo has not identified any public interest that would be served by disclosure of the requested information. He does not argue, for example, that disclosure would inform the public about what their government is up to. Davis v. Dep't of Justice, 968 F.2d 1276, 1282 (D.C. App. 1992) (*quoting* U.S. Dept. of Justice v. Reporters Comm. For Freedom of the Press, 489 U.S. 749, 773 (1989)). While this information may satisfy Castillo's curiosity, it does little to advance the public's understanding of a governmental agency's performance of its mission. Indeed, the Second Circuit upheld the FBI's withholding names of government personnel, indicating that there was a lack of genuine public interest in such information. Halpern, 181 F.3d at 297.

Castillo identified only a private interest in seeking the information and has failed to convince the Court of any public interest relevant to a balancing requirement contemplated under exemption 6. While Castillo articulated a specific explanation as to why he needs that information, i.e., to challenge information concerning the investigation into the legitimacy of the marriage, he has, at most, identified only a private and not a public interest.

Defendants demonstrated through the Law declaration that this information was obtained for law enforcement purposes and is therefore subject to exemption (b)(7)(C), and its disclosure would constitute an unwarranted invasion of personal privacy. Defendant agency made a determination that the individual privacy interests were not outweighed by any public interest in disclosure.

> To reveal the names and/or identifying information of third party individuals in the context of these records could reasonably be expected to cause embarrassment and humiliation and thus constitute a clearly unwarranted invasion of personal privacy. That interest extends to persons who are not only the subject of the investigation, but those who may have their privacy invaded by having their identities and information about them revealed in connection with an investigation. Based on the traditional recognition of strong privacy interests in law enforcement records, categorical withholding of information that identifies third parties in law enforcement records is ordinarily appropriate. Moreover, the third parties identified in the records have not provided consent to the release of their personally identifiable information.

[Doc. 21-1 at 8-9, ¶ 30].

The Court determines that the exemptions claimed by Defendant agencies are appropriate, and that the agencies have fully complied with their responsibilities under the Privacy Act and FOIA.

Accordingly, the Court GRANTS Defendants' Motion for Summary Judgment, and correspondingly DENIES Plaintiff's cross Motion for Summary Judgment.

IT IS SO ORDERED.

*Lorenzo F. Garcia*
Lorenzo F. Garcia
United States Magistrate Judge